UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALUE MANUFACTURED HOMES, LLC,
LAKE VILLA MOBILE HOME SALES CORP.,

                               Plaintiffs,

<u>DECISION AND ORDER</u>

12-CV-6392L

              v.

KEY BANK, N.A.,
JOSEPHINE WISNIEWSKI, in her
official and individual capacity;
JOEL BROWN, in his official and
individual capacity; Maria, last name
unknown at this time; John and Jane
DOES, 1-5, jointly and severally,

                               Defendants.
_____

### INTRODUCTION AND BACKGROUND

       Pending before the Court are defendants' motions to dismiss, stay or transfer this action. Defendants–Key Bank, N.A. ("Key Bank") and Josephine Wisniewski (collectively "Key Bank defendants"), and Joel Brown–seek relief because this action is directly related to actions already pending in state and federal courts in Michigan. For the reasons that follow, defendants' motions are granted, the claims against Joel Brown are dismissed, and the remaining claims are stayed.

       All these actions have their genesis in a mortgage foreclosure and receivership proceeding, *Key Bank Nat'l Ass'n v. Lake Villa Oxford Associates, LLC*, No. 2012-126588 ("Michigan State Court action"), which is currently pending in the Michigan Circuit Court, Oakland County ("Michigan State Court").

Key Bank is the mortgagee on Lake Villa Mobile Home Park ("Lake Villa"), a mobile home park in Michigan. Lake Villa is owned by Lake Villa Oxford Associates, LLC ("LVOA"), which is also the mortgagor on the Key Bank loan. Amended Complaint ("AC") ¶ 28.

Plaintiffs in this action, Value Manufactured Homes, LLC and Lake Villa Mobile Home Sales Corp., allege that they owned 128 mobile homes in Lake Villa. All of those homes have been sold by plaintiffs to third parties, either on installment loan contracts or lease-option contracts. AC ¶ 27. Plaintiffs allege that they have sold 79 of those homes to LVOA. AC ¶ 28. The remaining 49 have been sold to other third parties, but were subject to plaintiffs' rights under the installment and lease-option contracts. AC ¶ 29 Plaintiffs contend that the 79 units sold to LVOA were subject to the lien held by Key Bank pursuant to the mortgage, but that the other 49 were not subject to that lien. AC ¶¶ 28, 29..

The loan advanced by Key Bank to LVOA was apparently in arrears, and on April 30, 2012, Key Bank commenced foreclosure proceedings in state court, seeking, in addition to other relief, the appointment of a receiver. That request was granted, and on May 30, 2012, the Michigan State Court entered an order appointing Newbury Management Services, LLC ("Newbury") as receiver, with broad powers to manage and preserve the subject property, including the collection of income generated from the property. In addition, the court specifically prohibited suits by anyone against the receiver, absent prior leave from that court. *See* Amended Complaint Ex. A (Dkt. #9-2) § 12.1. It is the actions of the receiver that are at the heart of the disputes in Michigan and in this Court.

Plaintiffs in this action in the Western District of New York are defendants in the Michigan State Court action. (For the sake of convenience and clarity, however, they will be referred to throughout this Decision and Order as "plaintiffs," unless otherwise noted.) They have complained in the Michigan State Court action (in which plaintiffs were represented by counsel) that the receiver–not Key Bank–exceeded its authority by treating certain property as receivership property when it should not have been. Plaintiffs have alleged that the receiver

prevented plaintiffs from collecting rent or other payments due to them from the purchasers of the 49 units that were sold to third parties.  AC ¶¶ 32, 33.  They also allege that defendants have diverted to themselves, and cashed, checks made out to plaintiffs by the purchasers of those units.  AC ¶¶ 34, 35.

Plaintiffs have sought in several ways to defeat the actions taken by the receiver.  First, they filed a notice of removal in the United States District Court for the Eastern District of Michigan, seeking to remove the Michigan State Court action to federal court.  That effort was rebuffed by the federal court, which remanded the case back to the Michigan State Court. *See* Dkt. #11-5.  Undeterred, plaintiffs filed another notice of removal, in the same federal court, seeking to remove the same Michigan State Court action.  Not only was that effort promptly rejected by the federal court, but District Judge Victoria A. Roberts, in addition to remanding the case, imposed sanctions for the "frivolous" and "vexatious" attempted removal.  *See* Dkt. #11-6.

The original action filed here in the Western District of New York appeared to violate the Michigan State Court's order barring suits against the receiver without leave of court since, in addition to Key Bank, plaintiffs named the receiver, Newbury, as a defendant.  Thereafter, plaintiffs subsequently amended the complaint in the instant action, and have withdrawn the action against the receiver.  Dkt. #9.  The amended complaint asserts claims against Key Bank, Key Bank Senior Vice President Josephine Wisniewski, and Newbury President Joel Brown, sounding in conversion, tortious interference with contract, fraud and conspiracy to commit fraud, abuse of process, and "negligent supervision."  Subject matter jurisdiction is premised on diversity of citizenship.

Defendant Brown has moved for an order dismissing plaintiffs' claims against him in their entirety, or in the alternative transferring this action to the Eastern District of Michigan.  (Dkt. #10.)  Defendants Key Bank and Wisniewski have moved for an order dismissing, staying, or transferring the action.

**DISCUSSION**

**I. Claims Against Key Bank and Wisniewski**

No matter how one parses the complaint in this action here in the Western District of New York, it clearly relates to matters that are the subject of the mortgage foreclosure proceeding in the Michigan State Court. Plaintiffs here spend considerable time, in opposition to the pending motions, in attempting to make the present action look like something else, but it is unmistakably designed to challenge all that has occurred or is pending in the Michigan State Court action. In light of the nature of the proceedings and the tortured litigation history between these parties, this is a clear case in which this federal court should stay its hand and allow a paradigmatic state court foreclosure action to proceed. Plaintiffs, who again are defendants in that State Court Action, have the full panoply of rights available at trial in the Michigan State Court action (which, according to defendants, is currently scheduled to begin in the Michigan State Court on or about May 7, 2013) and on appeal, if necessary, in that action.

I agree with defendants that to the extent that plaintiffs in this action seek to challenge the Michigan State Court's order appointing a receiver, this action is barred by the judicially-created *Rooker-Feldman* doctrine, pursuant to which "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "'[I]nextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation will be barred under the *Rooker-Feldman* doctrine if it would be barred under principles of preclusion." *Id.* (quoting *Phifer v. City of New York*, 289 F.3d 49, 55-56 (2d Cir. 2002)) (internal quotations omitted).

The Michigan State Court's receivership order is broadly worded, and clearly covers the property at issue here. It relates to Lake Villa as a whole, including not only the real estate itself, but "[a]ll tangible and intangible property used or useable in connection with" the property, including "[a]ll income." AC at 3 § 7.1(a) - (c). "Income," in turn, includes, *inter alia*, all (current and past-due earnings, revenues, rent, issues and profits, accounts, and accounts receivable ... ." AC at 4 § 7.2. Try as plaintiffs might to avoid the effect of that order, the fact is that they are "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Cohen v. New York*, 481 Fed.Appx. 696, 697 (2d Cir. 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The *Rooker-Feldman* doctrine only applies where the state court judgment at issue was rendered before the federal action was commenced. Again, to the extent that plaintiffs here seek to attack the Michigan State Court's appointment of a receiver, the doctrine applies and this action is barred. In addition, to the extent that the present action concerns matters that are still being litigated in the Michigan State Court, this Court should and does abstain from exercising its jurisdiction over this dispute.

"Although federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction, there are several traditional categories of abstention." *Village of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-34 (1943)) (other citations omitted).

One such category was set forth in *Burford*. As "distilled" by the Supreme Court in *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989), the *Burford* doctrine provides as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases

would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

(internal quotation marks omitted).

Federal courts have recognized the significant state interest in placing proceedings relating to an insolvent or debtor party under the control of a single court. *See*, *e.g.*, *Munich American Reinsurance Co. v. Crawford,* 141 F.3d 585, 593 (5th Cir. 1998); *Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir. 1980). With respect to the case at bar, Michigan has established a statutory scheme for the appointment of receivers, *see* M.C.L. § 600.2926, which further "counsels restraint" on the part of this Court. *Bethphage Lutheran Service, Inc. v. Weicker*, 965 F.2d 1239, 1244 (2d Cir. 1992) (quoting *Levy*, 635 F.2d at 964). Plaintiffs' claims that defendants have misused the state court process, and misled the Michigan State Court, are matters that should be litigated in that court, not here, in order to avoid interfering with Michigan's implementation of that statutory scheme.

I also find that so-called *Colorado River* abstention applies here. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976),

> the Supreme Court held that, in addition to [other] earlier-established categories of abstention, in certain other "exceptional circumstances," *id.* at 813, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources, *id.* at 817-18. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). *See also Westfield*, 170 F.3d at 120-21 ("Abstention under *Colorado River* applies where ... 'state and federal courts exercise concurrent jurisdiction simultaneously'") (quoting *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996)).

In evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983):

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk*, 673 F.3d at 100-01 (quoting *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).  None of these factors alone "is necessarily determinative," but, instead, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.  Only the clearest of justifications will warrant dismissal."  *Colorado River*, 424 U.S. at 818-19 (citation omitted); *see also Moses H. Cone*, 460 U.S. at 16 (noting that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case").  The Second Circuit "ha[s] expressly held that '[a]lthough the test for *Colorado River* abstention is no mechanical checklist, the district court *must* balance the relevant factors in reaching its decision.'"  *Westfield*, 170 F.3d at 121 (quoting *Burnett*, 99 F.3d at 77) (alteration in original; additional internal quotation marks omitted).

These factors weigh in favor of abstention here.  It appears that plaintiffs in the case at bar are affiliated with Lake Villa Associates, *see* AC ¶¶ 3, 4; Dkt. #16-2 at 3, ¶ 2, and are both owned by Kenneth Burnham, who is a defendant in the Michigan State Court action; *see* Dkt. #16-2 at 3, ¶ 3; #16-3 at 1, 3.  The property at issue is in Michigan, and the Michigan State Court assumed jurisdiction over it, prior to the commencement of the instant action.  *Cf. National City Mortgage Co. v. Stephen*, 647 F.3d 78, 84 (3d Cir. 2011) (abstention improper where, *inter alia*, "the controversy has taken place almost exclusively in federal court, [and] the state proceeding began after N.M. appealed to us and has been stayed pending the outcome of this appeal").

The facts that the property itself is located in Michigan, and that the underlying events occurred there, also render a Michigan forum more convenient, and abstention here would help avoid piecemeal litigation, particularly inasmuch as the Michigan State Court action has

advanced further than the instant case, and is scheduled for trial this May. Finally, I note that plaintiffs' claims are all brought under state, not federal, law, and that plaintiffs have not demonstrated that they will be unable to protect their rights adequately in the context of the Michigan State Court action.[1]

## II. Claims Against Brown

I also conclude that this Court lacks personal jurisdiction over defendant Brown, who is alleged to be a resident of Michigan. Plaintiffs premise jurisdiction over Brown on N.Y. C.P.L.R. § 302(a)(3) (mistakenly cited by both plaintiffs and Brown as § 302(c)(3)), which provides for jurisdiction in New York over a nondomiciliary who commits a tortious act outside New York causing injury to a person or property within New York, if the nondomiciliary either does business in New York or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ... ."

All of the acts that Brown is alleged to have taken occurred in Michigan, and were taken in his capacity as a receiver, appointed by a Michigan court, with respect to Michigan property. There are no allegations in the complaint suggesting that Brown "expect[ed] or should reasonably [have] expect[ed his] act[s] to have consequences in" New York, nor is there any suggestion that Brown "derives substantial revenue from interstate or international commerce." In short, the complaint and the record before this Court are devoid of evidence, or even factual allegations, that support the Court's exercise of personal jurisdiction over Brown. Plaintiffs' claims against Brown are therefore dismissed in their entirety.

---

[1]The amended complaint does not state whether the claims are brought under Michigan or New York law, but given the location of the property and relevant events, it appears that Michigan law governs plaintiffs' claims. Regardless, the fifth *Colorado River* factor favors abstention here.

**CONCLUSION**

The motion to dismiss, stay, or transfer this action filed by defendants Key Bank, N.A. and Josephine Wisniewski (Dkt. #16), and the motion to dismiss or transfer this action filed by defendant Joel Brown (Dkt. #10) are granted. Plaintiffs' claims against defendant Brown are dismissed in their entirety, and the remaining claims are stayed, pending the outcome of a related case, *Key Bank Nat'l Ass'n v. Lake Villa Oxford Associates, LLC*, No. 2012-126588, in Michigan Circuit Court, Oakland County. Defendants shall inform the Court within fifteen (15) days of the date on which any judgment is rendered in the state court or those proceedings are otherwise resolved.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 28, 2013.